**Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000612
17-APR-2015
08:09 AM**

CAAP-12-0000612

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
DAVID HARRAWAY, Defendant-Appellant.

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 11-1-0133)

MEMORANDUM OPINION
(By: Nakamura, C.J., and Fujise and Reifurth, JJ.)

Plaintiff-Appellee State of Hawai'i (State) charged Defendant-Appellant David Harraway (Harraway) with Promoting a Dangerous Drug in the Second Degree (Count 1); Unlawful Use of Drug Paraphernalia (Count 2); Possession of a Prohibited Firearm (Counts 3-5); Unauthorized Control of a Propelled Vehicle (Count 6); Promoting a Detrimental Drug in the Third Degree (Count 7); and Ownership, etc., of Prohibited Detachable Ammunition Magazine (Counts 8-13). Harraway moved to suppress evidence seized by the police and statements he made during the execution of a search warrant on his residence. The Circuit Court of the First Circuit (Circuit Court)[1] denied Harraway's motion to suppress. Harraway then entered a conditional plea of guilty to the charges, reserving the right to appeal the Circuit Court's denial of his

---

[1] The Honorable Michael D. Wilson presided.

motion to suppress evidence. The Circuit Court sentenced Harraway to concurrent terms of imprisonment totaling ten years.

On appeal, Harraway argues that the Circuit Court erred in denying his motion to suppress evidence because he contends that the police failed to comply with "knock and announce" requirements in executing the warrant. In particular, Harraway asserts that the police were required to knock and announce at a locked gate attached to a chain link fence on the perimeter of the property, instead of at the front door to the house. As explained below, we affirm the Circuit Court.

BACKGROUND

The police obtained a warrant to search Harraway's residence for methamphetamine. The warrant authorized the police to execute the warrant between 6:00 a.m. and 10:00 p.m. The police arrived at the residence at about 6:30 a.m. To gain access to the front door of the house, the police cut the lock on a gate attached to a chain link fence on the perimeter of the property, without performing a knock and announce. The police then proceeded through a yard to the front door of the house where they performed the knock and announce four times, pausing in between each knock and announce. When no one responded, the police breached the front door. During the execution of the warrant, the police recovered drugs, numerous firearms, ammunition, ammunition magazines, drug paraphernalia, and stolen motor vehicles.

Harraway moved to suppress the evidence seized and statements he made during the execution of the search warrant. The Circuit Court held a hearing on Harraway's suppression motion. At the close of the evidence, Harraway argued that (1) it was improper for the police to breach the gate attached to the chain link fence on the perimeter of the property without first conducting a knock and announce; and (2) the knock and announce at the house was improper because it was not loud enough or long enough. The Circuit Court orally denied Harraway's suppression motion. With respect to Harraway's argument that the police were

2

required to knock and announce at the gate on the perimeter of the property, the Circuit Court found:

> Regarding the issue of the perimeter, under the circumstances that the officers discovered pursuant to the execution of the search warrant, I don't find it unreasonable that they did enter the perimeter, and to do so had to cut the lock. The purpose of the search warrant of course was to enter the home, and I think the knock-and-announce procedures were intended to give the occupants a reasonable opportunity to respond and [f]or the officers to use their discretion to perform the knock-and-announce procedures at the door rather than at the perimeter fence, I do find to be a lawful exercise of their authority pursuant to the search warrant.

The Circuit Court subsequently issued its "Findings of Fact and Conclusions of Law and Order Denying Defendant's Motion to Suppress Evidence and Statements" (Suppression Order), which provides in relevant part as follows:

### FINDINGS OF FACT

1. On January 27, 2011 the Honolulu Police Department's Special Services Division (hereinafter "SSD") was sent to assist in the execution of a search warrant for the residence of [**-***] Amio Street. The search warrant also extended to the defendant, David Allen Harraway. The Honolulu Police Department SSD had the responsibility of initiating entry onto the premises specified in the search warrant, securing the interior of the location and preserving the scene.

2. The residence at [**-***] Amio Street was a single story wooden structure. SSD determined the primary entry point to be a wooden door on the Amio Street side of the residence. SSD arrived at the target location at 6:30 a.m. on Thursday, January 27, 2011. SSD officers consisted of Officers Shane Wright, Paul Vargas, John Otto, Dudley Munar, and several other SSD officers. The team was coordinated by Sergeant Greg [Obara]. The SSD Team approached the front door of the residence and began the required "knock and announce" process.

3. The residence had a fence surrounding its perimeter and the police cut the lock at the entrance of the gate before advancing to the front door. The police officers performed the knock and announce requirement at the front door.

4. Officer Wright initiated the knock and announcement process at approximately 6:35 a.m. Officer Wright gave four loud knocks on either the door itself or the wall just to the right of the front entrance of the residence. In a loud and clear voice, Officer Wright announced **"Police, we have a search warrant, open the door now."** Officer Wright repeated this process four times, each time waiting approximately 2 seconds before repeating the

3

process. The total elapsed time was approximately twenty five to thirty **seconds**. After the completion of the third or fourth announcement Sergeant Obara instructed Officer Munar to check if the door was locked. After confirmation that the door was locked, Officer Obara instructed Officers Munar and Vargas to check and breach the door respectively.

5. While the breaching team approached the front door and throughout the breach, Officer Wright announced twice more that he represented the police office and that they were there to execute a search warrant upon the premises. SSD officers then entered the residence and secured the interior.

6. During the execution of the search warrant David Harraway and his girlfriend Christine Engcabo were located. Harraway was detained out in the living room and later asked a question by Detective Modest Ramos of the HPD Narcotics Vice Division inquiring whether vehicles located in the garage of the home were stolen. Harraway was not given his Miranda rights prior to the question. However, Harraway did not make a statement or respond in any way to the question.

## CONCLUSIONS OF LAW

1. Three steps are required before an officer may physically break into the place to be searched; the officer must state his or her office, must state his or her business, and must demand entrance. State v. Garcia, 77 Hawaii 461, 466, 887 P.2d 671, 676 (1995). The SSD Team performed the knock and announce requirement in accordance with [Hawaii Revised Statutes (HRS) §] 803-37 and within the guidelines set forth in State v. Garcia. Officer Wright knocked and announced, "Police, we have a search warrant, open the door now," on four separate occasions making their presence and purpose known in a loud and distinctive voice and tempo so that the occupants of the residence were reasonably alerted of the police presence.

2. Police officers executing a search warrant must afford the occupants of the premises a reasonable time period to respond to announcement before making forced entry. State v. Quesnel, 79 Hawai'i 185, 188, 900 P.2d 182, 191 (1995). The SSD Team waited approximately twenty-five to thirty seconds before beginning the breaching procedures. This is a reasonable time period under the circumstances. This case differs from previous Hawaii cases where the court has found the police in violation of the knock and announce rule because the previous cases involved significantly shorter waiting periods and less repetitions of the knock and announce requirement. In State v. Garcia, 77[] Hawaii 461, 468, 887 P.2d 671, 679 (1995), the Supreme Court of Hawaii found that the police did not give a suspect a constitutionally reasonable period to respond when they knocked and announced themselves and forced open the door after waiting less than ten seconds. In State v. Quesnel, 79 Hawai'i 185, 191, 900 P.2d 182, 188 (1995), the Supreme Court of Hawaii found that the suspect's constitutional rights were violated when the police failed to announce themselves with their initial knock and the evidence indicated that only zero to five seconds elapsed between the announcement of office and forced entry into the premises

(under a police claim there was exigent circumstances).
This case differs dramatically from the above cases, because
the officers gave between four to six knock and
announcements and waited between twenty-five to thirty
seconds (and possibly longer) before breaching the door.

3.      Under the circumstances of the particular
search, HPD SSD officers' decision to enter the property by
cutting the lock on the perimeter gate was also reasonable.
The officers were not required to knock and announce their
presence at the fence gate and it was reasonable to use
force to breach the fence.  The front door of the residence
was a reasonable location to perform the knock and announce.

4.      The Court finds that there was a question from
Detective Ramos to David Harraway during the execution of
the search warrant in violation of Harraway's Fifth
Amendment right to be informed that statements could be used
against him at trial.  However, Harraway did not respond to
Detective Ramos' question and therefore no statements are
suppressed.

IT IS HEREBY ORDERED that the Defendant David
Harraway's Motion to Suppress Evidence and Statements
be denied.

The Circuit Court entered its Judgment on June 6, 2012,
and this appeal followed.

## DISCUSSION

On appeal, Harraway contends that the failure of the
police to knock and announce at the gate to the chain link fence
on the perimeter of the property rendered the search illegal and
therefore the Circuit Court erred in denying his motion to
suppress evidence.  We disagree.[2]

In a case like this one, the proponent of a motion to
suppress evidence has the burden of establishing that the
evidence sought to be excluded was unlawfully secured.  State v.
Anderson, 84 Hawai'i 462, 467, 935 P.2d 1007, 1012 (1997).  We
review a trial court's findings of fact on a motion to suppress
evidence under the clearly erroneous standard and its conclusions
of law de novo.  Id.

---

[2] Because we reject Harraway's contention that the Circuit Court erred
in denying his motion to suppress, we need not address his argument that
without the evidence seized during the search, there was insufficient evidence
to support his convictions.

I.

Hawaii Revised Statutes (HRS) § 803-37 (2014) sets forth the knock and announce requirements that the police must follow in executing a search warrant.[3] HRS § 803-37 provides:

> The officer charged with the warrant, _if a house,_
> _store, or other building is designated as the place to be_
> _searched,_ may enter it without demanding permission if the
> officer finds it open. _If the doors are shut the officer_
> _must declare the officer's office and the officer's_
> _business, and demand entrance._ If the doors, gates, or
> other bars to the entrance are not immediately opened, the
> officer may break them. When entered, the officer may
> demand that any other part of the house, or any closet, or
> other closed place in which the officer has reason to
> believe the property is concealed, may be opened for the
> officer's inspection, and if refused the officer may break
> them.

(Emphasis added.)[4]

Based on the plain language of HRS § 803-37, we conclude that the location where the police were required to conduct their knock and announce in this case was at the door to Harraway's house, and not at the gate on the perimeter of the property. The statute provides that "if a house . . . is designated as the place to be searched" and "the doors are shut[,]" then the police "must declare the officer's office and the officer's business and demand entrance." HRS § 803-37. When read together, the statutory language establishes that the location where the police are required to perform the knock and announce is at the door of the house to be searched.

Our reading of HRS § 803-37 is supported by the purposes of the knock and announce rule, which are to (1) reduce

---

[3] HRS § 803-37 is Hawaiʻi's statutory codification of the common law knock and announce rule. See State v. Opupele, 88 Hawaiʻi 433, 435 n.3, 967 P.2d 265, 267 n.3 (1998).

[4] We note that in State v. Garcia, 77 Hawaiʻi 461, 887 P.2d 671 (1995), this court held that the portion of HRS § 803-37 that authorized the police to force entry into the place to be searched if "bars" to their entrance were not "immediately opened" violated the Hawaiʻi Constitution. Garcia, 77 Hawaiʻi at 467, 887 P.2d at 677. This court held that "under HRS § 803-37, occupants of the premises to be searched must be given a reasonable time to respond to the police's demand for entry to serve a search warrant." Id. at 468, 77 Hawaiʻi at 678.

the potential violence to both occupants and police resulting from an unannounced entry; (2) prevent unnecessary property damage; and (3) protect an occupant's right to privacy. State v. Eleneki, 92 Hawai'i 562, 566, 993 P.2d 1191, 1195 (2000). Requiring the police to knock and announce at a gate on the perimeter of the property would significantly increase the risk of danger to the police and the potential for violence. The knock and announce rule draws a delicate balance between the interest of the police in protecting their safety and preventing the destruction of evidence on the one hand, and an occupant's privacy interests and interest in avoiding property damage on the other. Significant delays in the ability of the police to secure entry into the residence skews this balance by giving occupants time to arm themselves, to prepare to respond with violence to the police entry, and to destroy evidence. That is why courts have held that fifteen to twenty seconds was a reasonable time for the police to wait after its knock and announce before forcing entry. See United States v. Banks, 540 U.S. 31, 39 (2003); United States v. Jones, 133 F.3d 358, 361-62 (5th Cir. 1998). The delay imposed by requiring the police to knock and announce at gates on the perimeter of properties would expose them to grave danger.

The facts of this case underscore this point. The police were executing a warrant to search for drugs at the residence of a suspected drug dealer. The record shows that in addition to methamphetamine and drug paraphernalia, the police recovered firearms (some of which were loaded), including machine guns, semi-automatic pistols, revolvers, rifles, and an illegal shotgun, and high-capacity magazines containing ammunition. The delay caused by having to knock and announce at the outside gate would have markedly increased the potential danger to the police.

In addition, under the circumstances presented by this case, requiring the police to knock and announce at an outside gate, rather than at the door to the residence, would undermine

7

the effectiveness and fair application of the knock and announce rule. It would increase the uncertainty over whether the occupants of the residence could actually hear the knock and announce and thus secure the benefits of a cooperative response. It would also restrict the ability of the police to assess the reaction to their knock and announce and thus determine whether the occupants were likely to cooperate or present a danger to the police, or were attempting to destroy evidence.

Courts from other jurisdictions have concluded that given the purposes of the knock and announce rule, the police, who were executing a search or arrest warrant at a residence, were not required to knock and announce at an outside fence gate. See State v. Sanchez, 627 P.2d 676, 679-81 (Ariz. 1981); State v. Schimpf, 914 P.2d 1206, 1207-09 (Wash. Ct. App. 1996).

In this case, after cutting the lock to the gate on the perimeter of the property, the police knocked and announced at the door to Harraway's residence before entering the residence. As the Circuit Court found, Officer Wright, "[i]n a loud and clear voice," knocked on the front door of the residence or the wall next to it and announced "Police, we have a search warrant, open the door now." Officer Wright repeated this process four times, pausing in between, until twenty five to thirty seconds had elapsed. Thereafter, the police breached the front door as Officer Wright twice more announced that they were the police and were there to execute a search warrant.

We conclude that the Circuit Court properly denied Harraway's suppression motion. The police were not required to knock and announce at the outside gate, and they acted reasonably and in compliance with HRS § 803-37 when they knocked and announced at the front door of the house before entering.[5]

---

[5] We note that Harraway contends that the Circuit Court's findings of fact were clearly erroneous because the Circuit Court failed to find that there was a doorbell at the perimeter gate. Harraway refused to "approve as to form" the Circuit Court's Suppression Order on this basis. However, the only person Harraway cites as testifying to the existence of a doorbell was

(continued...)

II.

We reject Harraway's contention that the police were required to knock and announce at the perimeter gate because the gate was in the curtilage of his residence. Although the protection of the Fourth Amendment extends to the curtilage of a residence and a warrantless search by the police in the curtilage is presumptively unreasonable, the police here had a search warrant, which authorized it to search Harraway's residence and its curtilage. Harraway cites no case holding that the police who have a valid search warrant are required to knock and announce before entering the curtilage of a residence. As noted, HRS § 803-37 requires that the knock and announce be conducted at the door to the residence, not at the curtilage.

We also reject Harraway's claim that the failure of the police to knock and announce at the perimeter gate violated his constitutional rights. In evaluating Harraway's constitutional claim, "we consider whether the police behavior was reasonable under the circumstances and whether the purposes behind the knock and announce rule were furthered." State v. Diaz, 100 Hawai'i 210, 221, 58 P.3d 1257, 1267 (2002). For the reasons previously discussed, we conclude that under the circumstances of this case, it was reasonable for the police to knock and announce at the door to Harraway's residence, rather than at the perimeter gate. Performing the knock and announce at the gate would have significantly increased the risk of danger to the police and the potential for violence. In contrast, performing the knock and announce at the front door provided the occupants of the residence with a better opportunity to learn of the police's

---

[5] (...continued)
himself, and it is the province of Circuit Court as the trier of fact to determine the credibility of the witnesses. In any event, the existence of a doorbell at the perimeter gate would not affect our analysis. Harraway contends that the Circuit Court's findings of fact were clearly erroneous for failing to include other matters he claims were supported by the evidence. The failure to make certain findings, however, does not make the findings that were made erroneous, and we conclude that the Circuit Court's findings were not clearly erroneous for failing to include the other matters Harraway contends were improperly omitted.

presence and purpose, to avoid a forced entry, and to protect their privacy. It also gave the police a better opportunity to evaluate the occupants' reaction to their knock and announce and to determine what steps needed to be taken to protect the officers' safety and prevent the destruction of evidence.[6]

CONCLUSION

We affirm the Circuit Court Suppression Order and its Judgment.

DATED: Honolulu, Hawai'i, April 17, 2015.

On the briefs:

Jon N. Ikenaga
Deputy Public Defender
for Defendant-Appellant

James M. Anderson
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

*Craig H. Nakamura*

Chief Judge

*[signature]*

Associate Judge

*[signature]*

Associate Judge

_____

[6] The State asserts that even if the police were required to knock and announce at the perimeter gate, the evidence recovered would not be subject to suppression. The State argues that because the police had a valid search warrant and recovered the evidence after they performed a proper knock and announce at the front door, the evidence recovered was not the fruit of any alleged illegality in the police's failure to knock and announce at the perimeter gate. In light of our holding that the police were not required to knock and announce at the perimeter gate, we do not address this argument by the State.